IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-03365-M

| | |
|---|---|
| CURTIS DILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| OFFICER J. BURRS, et al., ) | |
| ) | |
| Defendants. ) | |

This cause is before the court on defendants' pending motion for summary judgment, Mot. [D.E. 37], and plaintiff's pending motions to appoint counsel, Mot. [D.E. 48], Mot. [D.E. 51]. These motions are ripe for review.

Although plaintiff requests a lawyer, see Mot. [D.E. 48], Mot. [D.E. 51], no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989). "Exceptional circumstances" that contemplate appointment of counsel in *pro se* civil cases arise when a plaintiff lacks capacity to represent himself; this is a determination by the court that "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163.

Because this case is not complex, and because his filings indicate that he has the capacity to represent himself, plaintiff fails to show "exceptional circumstances" meriting appointment of counsel. Cf. id. Thus, the court DENIES these motions to appoint counsel [D.E. 48, 51].

The court now turns to defendants' pending motion for summary judgment, and, for the reasons discussed below, denies the motion.

Relevant Procedural History:

On December 10, 2020, Curtis Dillard ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed this complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 8].

Plaintiff alleges that, at Eastern C.I. on August 30, 2020, Officer James Burrus ("Burrus"), Officer Devaris Jenkins ("Jenkins"), and Sergeant Joe Edwards ("Edwards") (collectively, "defendants") violated his Eighth Amendment rights. Compl. [D.E. 1] at 5; see also Answer [D.E. 20] (noting these defendants' correct names). Plaintiff specifically alleges:

> Officer Jenkins put his hands on me and pushed my head in wall, hard[,] and continued to do this hurting me. [Burrus] help[ed] Jenkins do this to me. Sgt. Edwards [came] in my cell door and pull[ed his taser] and shot me in [unreadable] and [penis] when I was cuff[ed] behind back and held down by two officers. My head was push[ed into the] wall hard and I was shot in [penis] by a [taser] gun.

Compl. [D.E. 1] at 5–6. For relief, plaintiff seeks, *inter alia*, money damages. Id. at 8.

On February 24, 2021, the court allowed the action to proceed. Order [D.E. 10].

On June 25, 2021, defendants answered the complaint. [D.E. 20].

On April 13, 2022, defendants filed a motion for summary judgment, Mot. [D.E. 37], a memorandum in support [D.E. 38], a statement of facts [D.E. 39], and an appendix [D.E. 40].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff of the motion for summary judgment, the response deadline, and the consequences of failing to respond. See [D.E. 41].

Plaintiff's April 26, 2022, response disputed the statement of facts. Pl.'s Resp. [D.E. 43].

On April 28, 2022, the court, *inter alia*, liberally construed the April 26, 2022, letter as a response in opposition to the motion for summary judgment, allowed plaintiff until May 20, 2022, to further respond, and allowed defendants until June 6, 2022, to file a reply. Order [D.E. 44].

2

On May 2, 2022, plaintiff filed a response in opposition with supporting documents. See Pl.'s 2d Resp. [D.E. 45]; Pl.'s 2d Resp. Attach. [D.E. 45-1].

On May 3, 2022, plaintiff filed other documents in support. [D.E. 46, 46-1, 46-2, 46-3].

On May 20, 2022, plaintiff filed a response in opposition, Pl.'s 3d Resp. [D.E. 47], together with a statement of facts [D.E. 47-1], and a declaration, Pl.'s Decl. [D.E. 47-2].

On June 14 and August 8, 2022, plaintiff filed additional declarations. See Pl's 2d Decl. [D.E. 49]; Pl.'s 3d Decl. [D.E. 52].

Factual Disputes:

The facts are disputed where noted. Defendants state that, circa 2:40 p.m. on August 30, 2020, Jenkins and Burrus conducted a search of plaintiff's cell at Eastern C.I.[1] Defs.' Stmt. Mat. Facts. [D.E. 39] ¶¶7–8. As Jenkins and Burrus approached, plaintiff was standing inside his cell by the door, and they gave him an order to step out of his cell and submit to a cell search. Id. at ¶¶9–10. Plaintiff stepped out of his cell, Burrus patted him down, and Jenkins stepped into the cell to conduct a property search. Id. at ¶¶11–12. Plaintiff then went back into his cell and grabbed a chair.[2] Id. at ¶¶13–15. Jenkins and Burrus attempted to place restraints on plaintiff, other inmates gathered around the cell door, and Edwards responded to a request for staff

---

[1] Jenkins and Burrus declare they conducted a random search of plaintiff's cell because they suspected he was under the influence of drugs or alcohol. See Defs.' App., Ex. 2, Jenkins Decl. [D.E. 40-7] at ¶5; id., Ex. 3, Burrus Decl. [D.E. 40-8] at ¶5. Plaintiff, by contrast, declares that he was not under the influence of a drugs or alcohol. Pl.'s 3d Decl. [D.E. 52] at 2; see also Pl.'s 2d Resp. [D.E. 45] at 1 (indicating that unspecified discovery materials reveal Burrus's statement that, although plaintiff appeared to be under the influence of a substance, plaintiff's "speech was not slurred or was [he] staggering [sic].").

[2] Jenkins declares: "Plaintiff went back into his cell to grab a chair that had some items on it"; Jenkins told plaintiff not to remove items and ordered him to step back out of the cell; and "Plaintiff ignored my direct order and continued to attempt to take his chair and the items out of his cell." Jenkins Decl. [D.E. 40-7] at ¶¶10–12. Burrus declares: "The Plaintiff ran into the cell and grabbed at the chair full of items"; and "Officer Jenkins instructed the Plaintiff to leave the cell; however, the Plaintiff did not comply." Burrus Decl. [D.E. 40-8] at ¶¶7–8. Plaintiff, by contrast, declares "nothing was in the chair [sic]." Pl.'s 3d Decl. [D.E. 52] at 2. Plaintiff elsewhere states, "the chair I grab[b]ed had nothing in it and I grab[b]ed it so I could sit down [sic]." Pl.'s 2d Resp. [D.E. 45] at 3.

3

assistance.³ Id. at ¶¶16, 19–21, 27, 37–39. A struggle ensued between plaintiff, Jenkins, and Burrus, but the parties disagree whether plaintiff hit Jenkins in the nose, whether Jenkins shoved plaintiff's head into a wall, and whether the force Jenkins and Burrus used to restrain plaintiff was excessive.⁴ Id. at ¶¶17–18, 22–26, 31–35, 42–50. Edwards discharged his conducted electrical weapon ("CEW"), also known as a taser, but the parties disagree whether this constituted excessive

---

³ Jenkins declares: "After we made several attempts to order the Plaintiff to leave the chair alone, Officer Burrus and I ordered the Plaintiff to submit to restraints"; "Plaintiff continued to disobey orders to submit to restraints and became combative"; "Plaintiff was ordered several times to stop resisting, and he did not comply"; "other offenders in the pod were running upstairs toward the Plaintiff's cell and attempting to enter the cell"; "Officer Burrus left the Plaintiff and proceeded toward the cell door to prevent other offenders from entering the cell"; "Code 4 was called to request assistance from other correctional staff"; and Jenkins "continued to give the Plaintiff orders to stop resisting, applied a bent wrist technique, and placed [plaintiff] on a flat surface." Jenkins Decl. [D.E. 40-7] at ¶¶13–18, 23. Burrus declares: "Jenkins grabbed the Plaintiff's left arm to apply the bent wrist technique in order to apply restraints to gain control of Plaintiff"; "At Plaintiff's cell door, other offenders were trying to come in, so Officer Jenkins was left to deal with Plaintiff as I kept the other offenders out of the Plaintiff's cell"; and "Code 4 was called as I was back and forth with offenders at the door and trying to help restrain the Plaintiff." Burrus Decl. [D.E. 40-8] at ¶¶9–11. Edwards declares he responded to a call for officer assistance at 2:40 p.m. on Aug. 30, 2020, and "Burrus was standing in the doorway of plaintiff's cell, facing out, with a group of offenders appearing to be trying to enter the cell." Defs.' App., Ex. 1, Edwards Decl. [D.E. 40-1] at ¶¶5–8. Plaintiff declares "Jenkins did put his hands on me," and "Burrus help[ed] Jenkins use force against me." Pl.'s 3d Decl. [D.E. 52]. Plaintiff also acknowledges an investigator's comment that a video reflects numerous other inmates gathered around his cell. See Pl.'s Resp. [D.E. 43-1] at 1.

⁴ Jenkins declares: "Plaintiff remained combative and proceeded to swing his hand toward my face, hitting me in the nose"; after going to the door to prevent other offenders from entering the cell, "Burrus returned and assisted me with the Plaintiff"; "Plaintiff continued struggling with Officer Burrus and me, putting our safety at risk"; "While we were trying to restrain the Plaintiff, he would pull his arms away and make himself a dead weight, making it impossible for me to restrain him"; and "At no time was the Plaintiff's head shoved into the wall during this incident." Jenkins Decl. [D.E. 40-7] at ¶¶19–22, 28. Burrus declares: "Officer Jenkins and I attempted to gain control of the Plaintiff inside the cell"; "Plaintiff was refusing orders from Officer Jenkins and me to submit to restraints"; "Plaintiff was struggling with Officer Jenkins and me, putting out safety at risk"; and "At no time was the Plaintiff's head shoved into the wall during this incident." Burrus Decl. [D.E. 40-8] at ¶¶12–14, 19. Burrus and Jenkins both declare they did not use force once plaintiff was restrained; they used the minimum force needed to "obtain a correctional objective," namely, to protect themselves, regain control over plaintiff, and restore order; and they did not use force with an intent to be cruel or evil. Id. at ¶¶20–23; Jenkins Decl. [D.E. 40-7] at ¶¶29–32. Edwards declares: as correctional staff cleared the other offenders from the cell doorway, Edwards "turned around and found Officers Burrus and Jenkins attempting to gain control of the Plaintiff inside the cell"; plaintiff refused orders from Burrus and Jenkins to submit to restraints; plaintiff's struggle with Burrus and Jenkins was endangering their safety; Burrus and Jenkins were attempting to get plaintiff to stop pulling away so they could apply restraints; "plaintiff was finally placed against the bunk but refused to be placed in restraints"; plaintiff "was keeping his arms locked in the front of his body actively straining against the officers' attempts to place his hands behind his back"; "plaintiff was continuing to resist the officers and pushed off the bunk while the officers and [Edwards] gave him verbal commands to submit to restraints; plaintiff ignored the orders to submit to restraints." Edwards Decl. [D.E. 40-1] at ¶¶10–18. Plaintiff declares, inter alia: he did not hit Jenkins; he was restrained against his bunk by Jenkins and Burrus; and "I didn't put no one's life in danger [sic]." Pl.'s 3d Decl. [D.E. 52]; Pl's 2d Decl. [D.E. 49]. Plaintiff elsewhere states, "I never hit defendant in the nose because[,] if I did[,] he would have been bleeding but he denied injuries [sic]." See Pl.'s 2d Resp. [D.E. 45] at 2.

4

force.[5]  Id. at ¶¶29, 51–57, 62–66.  Jenkins and Burrus restrained plaintiff and he was taken to the restrictive housing unit ("RHU") where he received medical care.[6]  Id. at ¶¶57–61.

In his statement of facts, plaintiff recounts:

> as [I'm] inside the room [grabbed] the chair with nothing in it. Jenkins put his hands on me which starts the [assault]. Then [I'm] down on my knees[,] hands behind my back, [with my] head, chest, stomach forward on bunk where I lay. Jenkins puts his hand on the back of my head with force causing my head to hit [the] wall hard. Burrus help[ed] Jenkins do this to me. At no time did I get up off floor. When Edwards comes to my door my hands were behind my back. I was detained on my right side[,] held by Jenkins and Burrus. Edwards shoots Tasar [sic] and I folded up from the current, and then he Tased me again in my penis and my side. He didn't say Tasar, Tasar, Tasar [sic]. At no time did I hit Jenkins in the nose [sic].

Pl.'s Stmt. of Facts [D.E. 47-1] at 1 (writing, "I testify that these facts are true").

---

[5] Edwards declares: Edwards "pulled out [his] conducted electrical weapon ('CEW') and gave the Plaintiff one last order to submit to restraints"; Edwards aimed at plaintiff's "mid-back and upper rear leg area on his left side"; plaintiff stood up and attempted to pull away from the Burrus and Jenkins; Edwards "called out 'taser, taser, taser,' and then deployed the CEW; because plaintiff started to turn to his left as he attempted to pull away from Burrus and Jenkins, "the CEW probes landed in his lower left abdomen and his penis, rather than in his mid-back and upper rear leg area where [Edwards] had intended"; "Plaintiff became limp from the effects of the CEW, and [Edwards] gave Officers Burrus and Jenkins orders to restrain the Plaintiff while the CEW was cycling through its five-second run time"; "While Officers Burrus and Jenkins were placing the restraints on the Plaintiff, [Edwards] tried to switch the mode from the newly auto-selected second cartridge back to the deployed first cartridge, and [Edwards] inadvertently deployed the CEW for an additional half-second burst"; Edwards "did not use force on the Plaintiff after he was restrained and back under the control of Officers Burrus and Jenkins"; Edwards's intention was to use the minimum amount of force necessary to obtain a correctional objective, namely protecting Burrus and Jenkins from assault by plaintiff, to regain control of plaintiff, and to restore order; pepper spray was not feasible as Burrus and Jenkins would also have been incapacitated; Edwards used the appropriate amount of force to obtain the correctional objective; and Edwards's intention was not to be cruel or evil. Edwards Decl. [D.E. 40-1] at ¶¶19–25, 30–34. Jenkins and Burrus both declare that, because plaintiff was trying to pull away and didn't comply with Edwards's order to submit to restraints, "Edwards tasered the Plaintiff after yelling, "taser, taser, taser." See Jenkins Decl. [D.E. 40-7] at ¶19; Burrus Decl. [D.E. 40-8] at ¶¶15–17. Plaintiff declares, inter alia: he was already restrained; "at no time did Sgt. Edwards say Tasar, Tasar, Tasar [sic]"; the CEW should not be aimed at the groin; "what defendants done was to maliciously to cause harm sadistically [sic]"; and "[Sgt. Edwards's] deployment of his CEW for another second burst was not in good faith." Pl.'s 3d Decl. [D.E. 52] at 1–2. Plaintiff elsewhere states he was not a threat when the CEW was used because he was "down against the bunk in restraints on [his] knees." See Pl.'s 2d Resp. [D.E. 45] at 2.

[6] Edwards declares: once plaintiff was secured, Edwards notified the control office to contact medical staff and have them come to the RHU to evaluate plaintiff; Edwards assisted in escorting plaintiff to the RHU; "Plaintiff was able to walk normally, including down a flight of stairs without holding the railing, with his wrists cuffed behind his back"; and other officers took over once at the RHU. Edwards Decl. [D.E. 40-1] at ¶¶26–29. Plaintiff declares, inter alia: his injuries were not minor because he had to go to the hospital and have a needle injected into his penis to remove a taser prong. Pl.'s 3d Decl. [D.E. 52] at 2. Plaintiff elsewhere states that it was very painful to have the prong removed, and he now is having "constant pain in [his] lower extremities from being tasered in the groin." Pl.'s 2d Resp. [D.E. 45] at 3.

5

<u>Legal Standard</u>:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

<u>Discussion</u>:

Defendants argue, *inter alia*, that the force used was not excessive because the use of force was necessary, the amount of force used was appropriate, plaintiff's injuries were minor, defendants reasonably perceived a threat from plaintiff, and defendants made efforts to temper the severity of the force used. Defs.' Mem. [D.E. 38] at 11–16. Defendants also argue they are entitled to qualified immunity. Id. at 16–17.

To succeed in an Eighth Amendment excessive force claim, plaintiff must establish that "the officials act[ed] with a sufficiently culpable state of mind," and that "the alleged wrongdoing

6

was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quotation omitted). Factors to determine whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113.

Contemporaneous medical records reflect that, right after the August 30, 2020, use-of-force incident, plaintiff was transported to a local hospital to remove a taser prong imbedded in his penis, and that he later complained of headaches due to his head hitting the wall. See [D.E. 46] at 6, 14.

The record also reflects plaintiff's September 3, 2020, statement as to the incident:

Officer put his hand on me [sic]. At that time and moment I felt threatened, cornered, fearful, boxed in and terrified. Edwards came on the scene and told me to stop resisting. But [Burrus] and Jenkins are still hurting me. So I go into offence mode [sic] to protect myself. Edwards pulled his [taser] and told me to stop resisting. I was shot in my side and my [penis]. . . . I [have] headaches all the time now from my head being shoved in the wall. I have the right to protect myself.

Defs.' App., Ex. 1C, Edwards Decl. Attach. [D.E. 40-4] at 1.

The parties' disparate statements and declarations–particularly as to whether, with Burrus's aid, Jenkins pushed plaintiff's head hard into the wall; if plaintiff necessitated the force used by striking Jenkins, going "into offence mode [sic]," and endangering these officers; and whether plaintiff already was restrained when Edwards deployed the CEW–cannot be reconciled. See, e.g., Brooks, 924 F.3d at 116–18 (noting a reasonable jury could find taser shocks against intransigent inmate who was handcuffed and surround by officers amounted to excessive force).

After viewing the evidence and the inferences drawn therefrom in the light most favorable to plaintiff, Scott 550 U.S. at 378, issues of material fact presently preclude entry of summary judgment for defendants as to plaintiff's excessive force claims, Anderson, 477 U.S. at 247–48.

Further, although defendants contend that qualified immunity insulates them from suit, because there are genuine issues of material fact as to plaintiff's excessive force claims, the present record also precludes a qualified immunity finding on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–66 (2014); Brooks, 924 F.3d at 119.

### Conclusion:

In sum, the court: DENIES plaintiff's motions to appoint counsel [D.E. 48, 51]; DENIES defendants' motion for summary judgment [D.E. 37]; REFERS the action to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference; and APPOINTS North Carolina Prisoner Legal Services, Inc. ("NCPLS") for the limited purpose of assisting plaintiff in the court-hosted settlement conference, see Standing Order 21-SO-11 at ¶7.

SO ORDERED, this 16th day of March 2023.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge

8